UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL R. LICHTNER,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security Administration,<br><br>    Defendant. | Case No. SA CV 14-1504-SP<br><br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

On September 23, 2014, plaintiff Daniel R. Lichtner filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"). Plaintiff, who is acting as heir and representative of the Estate of Martin Lichtner, seeks review of a denial of an application for disability insurance benefits ("DIB") filed by Martin D. Lichtner ("claimant"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issue for decision, whether the Administrative Law Judge ("ALJ") erred at step five in relying on vocational expert ("VE") testimony that deviated from the Dictionary of Occupational Titles ("DOT") without obtaining an explanation for the deviation. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-14; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-7.

Having carefully studied the parties' moving and opposing papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did not err at least insofar as she found claimant could perform the work of a small products assembler and inspector/hand packager as these jobs are performed locally. Consequently, this court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

The claimant, Martin Lichtner, was fifty-two years old on his date last insured. AR at 118, 619. Claimant had a GED and past relevant work as a truck driver and warehouse person. *Id.* at 620, 2858.

On September 17, 2001, claimant filed an application for DIB, ultimately alleging an onset date of November 27, 1997. *See id.* at 107. The Commissioner denied claimant's application initially and upon reconsideration, after which claimant filed a request for a hearing. *See id.* On March 5, 2003, ALJ Dean K. Franks found claimant was entitled to DIB for the period November 23, 1997 through August 13, 1999. *Id.* at 107-114; *see id.* at 1584. But on June 13, 2003 the Appeals Council issued an unfavorable decision vacating the ALJ's March 5, 2003 decision. *See id.* at 1295, 1584. Claimant did not pursue any legal remedies at that time (*id.*), therefore the Appeals Council's decision of June 13, 2003 is final and binding, and is not now subject to review by this court. *See* 24 U.S.C. § 405(g)-(h).

On August 12, 2003, claimant filed a second DIB application, alleging an onset date of November 27, 1997, due to high blood pressure, degenerative disc disease, diabetes mellitus, neuralgia of legs and arms, depressive mood disorder, and panic disorder. AR at 152-55, 620. The Commissioner denied claimant's application initially and upon reconsideration, after which claimant filed a request for a hearing. *Id.* at 118-19, 129-141.

On May 24, 2006, claimant, represented by counsel, appeared and testified at a hearing before the ALJ Sally Reason. *Id.* at 1268-84. A vocational expert ("VE") also testified. *Id.* at 1284-93. On July 7, 2006, the ALJ denied claimant's claim for benefits. *Id.* at 78-83. Claimant filed a request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 5-7, 71.

On May 27, 2008, claimant filed a complaint in this court against the Commissioner. *See* case no. SA CV 08-3321-MLG. In response to the parties' stipulation, on February 19, 2009 the court remanded the case to the Commission for further administrative proceedings. AR at 1326-29.

Claimant, represented by new counsel, appeared and testified again before ALJ Reason on September 9, 2009. *Id.* at 1545-56. A VE also testified. *Id.* at 1556-60. On October 8, 2009, the ALJ again denied claimant's claim for benefits. *Id.* at 1310-19. Claimant filed a request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1295-97, 1306.

On January 12, 2011, claimant filed a second complaint in this court against the Commissioner. *See* case no. CV 11-56-SP. The court found legal error in the ALJ's decision and remanded the case to the Commissioner. AR at 1597-1608, 1615.

A third hearing was conducted on March 19, 2013, at which claimant appeared, represented by the same counsel, and testified before ALJ Elizabeth Lishner. *Id.* at 2832-55. VE Frank Corso also testified. *Id.* at 2855-64. On April

18, 2013, ALJ Lishner denied claimant's claim for benefits a third time. *Id.* at 1583-95.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that claimant had not engaged in substantial gainful activity from June 14, 2003, the first day following the Appeals Council's binding decision denying claimant benefits, through September 30, 2003, the date last insured. *Id.* at 1586; *see id.* at 2835.

At step two, the ALJ found claimant suffered from the following severe impairments: degenerative disc disease of the cervical spine; hypertension; cubital tunnel syndrome; history of carpel tunnel syndrome; diabetes; and a bipolar mood disorder. *Id.* at 1586.

At step three, the ALJ found claimant's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.*

The ALJ then assessed claimant's residual functional capacity ("RFC"),[1] and determined he had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the limitations that claimant could not perform any work involving: more than frequent gripping, handling, or fingering; any use of vibratory or pounding tools; more than frequent flexion or extension of the head and neck; any overhead reaching with the upper extremities; any public contact; or more than occasional contact with coworkers or supervisors. *Id.* at 1587.

The ALJ found, at step four, that claimant was incapable of performing his past relevant work. *Id*. at 1593.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

4

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that claimant could perform, including small products assembler, inspector/hand packager, and housekeeper. *Id.* at 1593-94. Consequently, the ALJ concluded that, for the relevant period, claimant did not suffer from a disability as defined by the Social Security Act. *Id*. at 1594.

Claimant filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1566-69, 1571-79. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"

*Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

Plaintiff argues the ALJ erred at step five in determining alternative work exists that claimant could perform. P. Mem. at 3. Specifically, plaintiff contends that based on the ALJ's RFC determination, claimant could not perform the work of a small products assembler because he was precluded from having more than occasional contact with coworkers or supervisors; he could not perform the work of a housekeeper because he was precluded from any public contact; and he could not perform the work of a small products assembler, a housekeeper, or an inspector/hand packager because he was precluded from any overhead reaching with his upper extremities. *Id.* at 4-14.

The claimant has the burden of "furnish[ing] medical and other evidence that [the Commissioner] can use to reach conclusions about [claimant's] medical impairments(s)." *Mayes*, 276 F.3d at 459 (quoting 20 C.F.R. § 404.1512(a) (2000)). At step four, the claimant must prove he is unable to perform his past relevant work either as he actually performed it, or as it is generally performed. *Pinto v. Massanari*, 249 F. 3d 840, 845 (9th Cir. 2001). If claimant meets his burden at step four, the sequential evaluation process continues, but the burden shifts to the Commissioner.

To support a finding that the claimant is not disabled at step five, the Commissioner must provide evidence demonstrating work, other than claimant's past relevant work, exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and RFC.

6

20 C.F.R. §§ 404.1520(e), (g), 416.920(e), (g); *see Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (requiring a showing that a claimant retains the ability to perform other gainful activity at step five).  ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (stating the DOT is a source of reliable job information).  The DOT and its Selected Characteristics of Occupations supplement may be relied upon as the rebuttable presumptive authority regarding job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); *see also* Selected Characteristics of Occupations Titles (U.S. Dep't Lab. Emp. Training Admin. 1993) ("SCO").

     The ALJ, having "determined that the [VE]'s testimony [was] consistent with the information contained in the [DOT]," found claimant could perform the work of a small products assembler, an inspector/hand packager, and a housekeeper. AR at 1594; *see id.* at 2857; DOT 706.684-022, 1991 WL 679050 (small products assembler I); DOT 559.687-074, 1991 WL 683797 (inspector and hand packer); DOT 323.687-014, 1991 WL 672783 (cleaner, housekeeper). The VE testified there were 110,000 national and 4,500 local small parts assembler jobs; 50,000 national and 2,000 local inspector and packer jobs; and 237,00 national and 8,000 local housekeeper jobs. AR at 2857.  Thus, the ALJ found claimant was not disabled, as defined by the Social Security Act, for the period under consideration.

     Plaintiff argues that – despite the VE's testimony to the contrary – the VE deviated from the DOT and the ALJ failed to solicit sufficient explanation to justify that deviation. P. Mem. at 5-14; *see* AR at 2861. An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing

Social Security Ruling ("SSR") 00-4p).[2] But failure to inquire can be deemed harmless error where there is no apparent conflict, or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19.

An ALJ fulfills her initial obligation by inquiring whether the VE's testimony conflicts with the DOT, but that is not the end of the ALJ's obligations. Where a VE wrongly testifies that there is no conflict, if "evidence from a VE 'appears to conflict with the DOT,' SSR 00-4p requires further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p). Where the ALJ fails to obtain an explanation for and resolve an apparent conflict – even where the VE did not identify the conflict – the ALJ errs. *See Hernandez v. Astrue*, 2011 WL 223595, at *2-5 (C.D. Cal. Jan. 21, 2011). In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'" *Massachi*, 486 F.3d at 1153 (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

**A.     The VE's Testimony**

The ALJ ultimately determined claimant had the RFC to perform light work with limitations that included, as pertinent here: (1) no overhead reaching with the upper extremities; (2) no work involving public contact; and (3) no work

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

8

involving more than occasional contact with coworkers or supervisors. AR at 1587. At the March 19, 2013 hearing, VE Frank Corso testified that someone with these limitations could perform the jobs of small products assembler (DOT 706.684-022), inspector/hand packager (DOT 559.687-074), and housekeeper (DOT 323.687-014). *Id.* at 2857-59. The VE so testified in responding to a series of questions posed by the ALJ, in which the VE at times described the basis for his expert testimony.

The ALJ asked the VE if any occupations existed in the economy that could be performed by:

> a hypothetical individual of the same age, education, experience as the claimant who can lift 20 pounds occasionally, ten pounds frequently, stand, walk and sit six, occasional climbing, frequent all other postural, and occasional overhead with the bilateral upper extremities . . . .

*Id.* at 2856. The VE stated such an individual could perform the work of a cashier, a small products assembler, and an inspector/hand packager. *Id.* at 2857. When the ALJ added to this hypothetical the limitations of "no public contact and only occasional contact with co-workers and supervisors," the VE determined such an individual would be precluded from the cashier job. *Id.* But in addition to the small products assembler and inspector/hand packer jobs, such an individual could perform the work of a housekeeper. *Id.*

The ALJ then asked the VE whether the jobs of small products assembler, inspector/hand packager, or housekeeper could be performed by:

> a hypothetical individual of the same age, education, experience as the claimant, who can lift 20 pounds occasionally, ten pounds frequently, no – let's do occasional – frequent gripping, frequent handling and fingering and gripping, no vibrations – sorry, no vibratory tools or pounding tools, and no – and frequent flexion and

9

1       extension of the head and neck, and again, no overhead with the
2       bilateral upper extremities.
3 AR at 2858. The VE stated such an individual could perform all three jobs. *Id.* In
4 coming to this determination, the VE noted the SCO characterized these jobs as
5 having frequent manipulative demands. *Id.* He noted the SCO does not
6 specifically address "flexion and extension of the head and neck," but the VE
7 stated he believed such an RFC would be consistent with the DOT for these three
8 positions. *Id.* The ALJ asked the VE to elaborate on the basis for his belief in this
9 consistency. The VE responded:

      Well, when they're using their hands frequently that they might be
      looking down for part of that time with their neck, and this is based
      also on my observation of these jobs, so they're not going to be
      looking down constantly, but they'll be looking down about two-
      thirds of the day, but there's other times when they might be
      exchanging tools or equipment or materials, things of that nature, so I
      think – yes, so it should be consistent with these jobs.

17 *Id.* at 2859. The VE also found the additional limitations of no public contact and
18 only occasional contact with co-workers and supervisors would not preclude the
19 hypothetical individual from performing the work of small products assembler,
20 inspector/hand packager, or housekeeper. *Id.* He further found the small products
21 assembler jobs could be eroded by ten percent to account for the possibility of
22 such position might involve a small hammer and thus pounding, which is another
23 characteristic not listed in the SCO. *Id.*
24       The ALJ asked the VE if the jobs could be performed by this hypothetical
25 individual if in addition to the previously listed limitations, including no overhead
26 reaching with bilateral upper extremities, he "cannot do rapid, repetitive flexion."
27 AR at 2860. The VE acknowledged "[a]ll these occupations have frequent
28 reaching" and confirmed the ALJ was specifically inquiring about rapid movement

of the wrists and elbows. *Id.* The VE stated these jobs include reaching for two-thirds of the day and the additional limitation would preclude an individual from performing all three jobs. *Id.* The VE further explained:

> I think that when we combine the no public contact with [only] occasional reaching and handling, then we're eroding that unskilled, light job base to a point where there's few, if any, employability prospects for the person because anything that's going to not involve the public is going to involve hand use . . . .

*Id.* The ALJ asked: "if I changed it – if it was back to frequent handling and reaching then –," to which the VE responded: "between the fingering and the handling and the reaching, that's enough to allow when to do these types of production jobs or cleaning jobs that I referred to." *Id.* at 2861. The ALJ then confirmed with the VE the "information other than what [he] testified to about from [his] experience [was] consistent with the information found in the Dictionary of Occupational Titles and the companion publications." *Id.*

**B.** **Analysis**

    **1.** **Limitation to No More Than Occasional Contact with Coworkers or Supervisors**

Plaintiff argues the ALJ failed to identify or resolve the conflict between claimant's RFC, under which he can not perform any work requiring more than "occasional contact with coworkers or supervisors" (AR at 1587), and the DOT's requirement that a small products assembler "[f]requently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker." DOT 706.684-022; *see* P. Mem. at 5-7. The court finds there is no actual or apparent conflict, and even if a conflict did exist it was sufficiently explored by the ALJ with the VE to ensure claimant could perform the job as the job is performed locally. *See Johnson*, 60 F.3d at 1435-6 (recognizing one

"eminently appropriate use of the vocational expert's knowledge and experience" is to provide information about how jobs are performed within specific localities).

Based on the lengthy discussion related to frequent manipulative demands of this job, it is reasonable to infer the VE contemplated all the SCO characteristics related to these positions. *See Light*, 119 F.3d at 793. As defendant argues, this job is characterized as having no significant "people" component, no requirement of "talking," and only an occasional "hearing" requirement, which tends to contradict plaintiff's supposition regarding the amount of coworker interaction required to work in an assembly group. D. Mem. at 3; *see* SCO at 284, E-1, ID-2. Indeed, there is no reason to suppose that working by oneself to assemble one or two parts and then passing the unit to the next coworker involves significant contact with a coworker in the sense meant here, or at least more than occasional contact, particularly given the SCO's description of the position.

The court recognizes that at least one other court has found "unclear whether the job of a small products assembler would require more than 'occasional . . . coworker interaction,'" as, inter alia, "the DOT does not fully describe the nature of the interaction between coworkers." *See Veteto v. Colvin*, 2014 WL 412414, at *4 (D. Or. Feb. 3, 2014). But this court is not persuaded that any vagueness in the DOT description creates an apparent conflict with the VE's testimony that the ALJ was required to resolve, particularly given that the SCO describes the job as having no significant "people" component and no talking requirement. Moreover, even assuming arguendo claimant's interpretation is applicable to this job as it is performed nationally, the VE is clearly drawing from his personal observation of the job. *See* AR at 5859 ("this is based also on my observation of these jobs"); *Johnson*, 60 F.3d at 1435 (finding the ALJ correctly relied on VE's testimony that claimant can perform a job in the face of apparently conflicting DOT characteristics). The ALJ thus did not err in relying on the VE,

who testified, based on his observation of the way the small product assembler job is performed, that claimant would not be precluded from this work by his limitation to no more than occasional contact with coworkers.

### 2. Limitation to No Public Contact

Plaintiff argues the ALJ failed to identify or resolve the conflict between claimant's RFC under which he cannot perform "any work involving public contact" (AR at 1587), and the DOT's requirement that a housekeeper "render[] personal assistance to patrons." DOT 323.687-014; *see* P. Mem. at 7-8. On its face, claimant's RFC conflicts with the DOT. *See Young v. Colvin*, 610 F. App'x 615, 616 (9th Cir. 2015) (defining the job of housekeeper as involving some minimal contact with the public); *Andrews v. Colvin*, 2015 WL 4399479, at *5 (C.D. Cal. July 16, 2015) (finding a conflict between the public contact required to perform the job of housekeeper and an RFC calling for no interaction with the public); *Norris v. Colvin*, 2013 WL 3676661, at *3 (C.D. Cal. July 11, 2013) (same); *Barton v. Astrue*, 2012 WL 5457462, at *3 (C.D. Cal. Nov. 8, 2012) (same); *Pardue v. Astrue*, 2011 WL 5520301, at *4 (C.D. Cal. Nov. 14, 2011) (same). This conflict is apparent.

The ALJ fulfilled her basic obligation by inquiring whether the VE testified "consistent with the information in the [DOT] and the companion publications." AR at 2861. But she failed to resolve the apparent conflict between claimant's RFC and the public contact involved in performing the job of a housekeeper. This is not a merely possible conflict like the one described above, and the VE's general testimony that he has observed the jobs as performed is insufficient to address this conflict.

By not identifying and asking the VE about the conflict with claimant's restriction from public contact, the ALJ failed in her affirmative duties to obtain "a reasonable explanation for the apparent conflict" (*Overman*, 546 F.3d at 463) and "persuasive evidence to support the deviation." *Massachi*, 486 F.3d at 1153; *see*

13

*Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (collecting cases holding that SSR 00-4p "imposes 'an affirmative duty on the part of an ALJ to inquire about conflicts between vocational expert testimony and the DOT'") (citations omitted); *Hernandez*, 2011 WL 223595, at *2-5; *Mkhitaryan v. Astrue*, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) (remanding "[b]ecause the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict"). As such, the ALJ erred in relying on housekeeping as alternative work claimant could do.

### 3. Limitation to No Overhead Reaching

Plaintiff argues the ALJ failed to identify or resolve the conflict between claimant's RFC under which he is precluded from any overhead reaching with the upper extremities (AR at 1587), and the reaching demands as described in the DOT for all three jobs. P. Mem. at 9-10. Given that the ALJ erred with respect to the housekeeping position as described above, at issue here is whether the ALJ erred in not resolving a conflict between the overhead reaching limitation and the reaching requirements of the small products assembler and inspector/hand packager jobs. *See* DOT 706.684-022, 559.687-074.

The DOT lists among the physical demands of both the small products assembler and inspector/hand packager jobs: "Reaching: Frequently." *See* DOT 706.684-022, 559.687-074. The DOT does not specify whether this reaching includes overhead reaching. *Id.* But the SCO defines "reaching" in general as "'extending hand(s) and arm(s) in any direction.'" *Mkhitaryan*, 2010 WL 1752162, at *3 (quoting *SCO*, App. C (1993)) (emphasis omitted); *see* SSR 85-15 (defining "[r]eaching" as "extending the hands and arms in any direction"). Reaching "in any direction" plainly encompasses overhead reaching. Of course, although reaching generally includes reaching in any direction, nothing in the DOT specifies that the reaching required by these particular jobs included overhead reaching. Thus, there was a potential conflict between the DOT job

14

descriptions and the VE's testimony that a person precluded from overhead reaching could perform the jobs. Neither the ALJ nor the VE identified this potential conflict, and thus neither attempted to resolve it. *See Prochaska*, 454 F.3d at 736 ("It is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help.").

Nonetheless, although the conflict was not identified here, the VE was not entirely silent on the topic, nor did he testify exclusively based on the DOT. As noted above, the VE made clear he was testifying based not only on his knowledge of the DOT, but also based on his "observation of these jobs." AR at 2859. He testified persons performing the jobs at issue would be "using their hands frequently," and while "they're not going to be looking down constantly, [] they'll be looking down about two-thirds of the day." *Id.* He went on to testify that the jobs require "reaching for two-thirds of the day" (*id.* at 2860), suggesting, in conjunction with his prior testimony, that virtually all the reaching involved reaching while looking down. He said the remainder of the time would be doing things like "exchanging tools or equipment or materials." *Id.* at 2859. Most importantly, he clearly testified that although a limitation to only occasional or no repetitive reaching would eliminate these jobs, a preclusion from overhead reaching with the upper extremities would not. *Id.* at 2858, 2860. Significantly, when he affirmed his testimony was consistent with the DOT, he more particularly affirmed it was consistent "other than what [he had] testified to about from [his] experience." *Id.* at 2861.

The ALJ could reasonably infer from the VE's testimony that the claimant, who could not reach overhead but was capable of other repetitive reaching, was able to perform the work of a small products assembler and an inspector/hand packager, at least as the jobs are performed locally, as personally observed by the VE. *See Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982) (defining a VE's

15

role as "translat[ing] factual scenarios into realistic job market probabilities"). The ALJ may have failed to resolve a potential conflict as the jobs are performed in the national economy. But the VE's testimony based on his own observations of how the jobs are performed, presumably at least in the local economy, was sufficient to establish that claimant could perform such work. *See Johnson*, 60 F.3d at 1436 (reasoning an ALJ may "rely on expert testimony to find that the claimant could perform the two types of jobs the expert identified, regardless of their classification by the DOT," when that testimony is based on the VE's knowledge of how a job is performed locally).

### 4. Number of Jobs

The Ninth Circuit "has never clearly established the minimum number of jobs necessary to constitute a 'significant number.'" *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1478 (9th Cir. 1989). But it has held that "2,466 jobs constitute a significant number" (*Id.* at 1479), and that 1,300 jobs in the state is significant where 622,000 of the same types of jobs were available nationally. *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002). Here, the VE testified there were 4,500 local small parts assembler jobs and 2,000 local inspector/hand packager jobs, with the local area being Los Angeles County. AR at 2857. Thus, claimant's ability to perform either of the jobs amounts to "substantial evidence support[ing] the ALJ's finding that [claimant] was 'not disabled.'" *See Thomas*, 278 F.3d at 960.

In sum, the ALJ did not err in determining claimant could work as a small products assembler or an inspector/hand packager as the jobs are performed locally. 6,500 such jobs existed in the local economy. The ALJ's determination that claimant was not disabled is thus supported by substantial evidence.

# V.

# **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: March 31, 2016

_____
SHERI PYM
United States Magistrate Judge